```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
 2
     -----------------------------------------------------------
 3                                     )
     Scott A. Lemieux,                 )   File No. 16-CV-1794
 4                                     )             (JRT/HB)
             Plaintiff,                )
 5                                     )
     vs.                               )   Saint Paul, Minnesota
 6                                     )   October 27, 2016
     Soo Line Railroad Company,        )   3:08 p.m.
 7   d/b/a Canadian Pacific,           )
                                       )   DIGITAL AUDIO
 8           Defendant.                )   RECORDING TRANSCRIPT
     -----------------------------------------------------------
 9
                  BEFORE THE HONORABLE HILDY BOWBEER
10          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
                          (MOTIONS HEARING)
11
     APPEARANCES
12    For the Plaintiff:          HUNEGS, LeNEAVE & KVAS, PA
                                  THOMAS W. FULLER, ESQ.
13                                1000 Twelve Oaks Center Drive
                                  Suite 101
14                                Wayzata, Minnesota 55391

15    For the Defendant:          STINSON LEONARD STREET
                                  MARGARET M. BAUER REYES, ESQ.
16                                150 South Fifth Street
                                  Suite 2300
17                                Minneapolis, Minnesota 55402

18    Transcribed By:             CARLA R. BEBAULT, RMR, CRR, FCRR
                                  316 North Robert Street
19                                Suite 146 U.S. Courthouse
                                  Saint Paul, Minnesota 55101
20

21

22
          Proceedings recorded by digital audio recording;
23   transcript produced by computer.

24

25
```

**P R O C E E D I N G S**

**IN OPEN COURT**

1

2

3

4          THE COURT:  We're in court this afternoon in the

5   matter of Scott Lemieux versus Soo Line Railroad Company,

6   d/b/a Canadian Pacific.  This is civil matter number

7   16-1794, and we're in court for a hearing on Plaintiff's

8   Motion for Leave to Amend his Complaint.  Let me start by

9   getting appearances first on behalf of Mr. Lemieux.

10          MR. FULLER:  Good afternoon, your Honor.  My name

11   is Thomas Fuller on behalf of Mr. Lemieux.  F-U-L-L-E-R.

12          THE COURT:  And on behalf of Soo Line.

13          MS. REYES:  Good afternoon, your Honor.  Greta

14   Bauer Reyes from Stinson Leonard Street on behalf of

15   Defendant Soo Line Railroad Company, doing business as

16   Canadian Pacific.

17          THE COURT:  So this is Plaintiff's motion so,

18   Mr. Fuller, I'll let you proceed.

19          MR. FULLER:  Thank you, your Honor.  And I think

20   it will be the best use of our time if I just jump right to

21   the Defense's argument in this matter and their reliance on

22   *Brisbois*.

23          THE COURT:  Okay.  What I'm going to ask you to do

24   is make sure --

25          MR. FULLER:  Is that better?

1          THE COURT:  And you can also raise the podium a

2     little bit as well to make sure that it's squarely lined up.

3     There you go.

4          MR. FULLER:  I have never been told I was tall

5     enough.

6          THE COURT:  Ms. Meyers will let us know if it's

7     not recording properly, but that should give you a pretty

8     reliable --

9          MR. FULLER:  Thank you, your Honor.  If you can't

10    hear me, just let me know.

11          And I would just like to address the Defense's

12    arguments that this is somehow a new claim absolutely

13    separate, distinct, discrete allegation that was never

14    before OSHA in the first place.  And I will back up by just

15    briefly going through the facts and that involves

16    Mr. Lemieux's February 12th report of 56 bad brakes to the

17    Canadian Pacific.  This is 56 railcars.  So he reports 56 of

18    those cars, as part of his Class I federally-mandated air

19    brake test, were to what he thought in good faith to be bad

20    ordered or defective.

21          Subsequently on March 4th, as part of his next

22    duty and activities, Mr. Lemieux was stopped by track

23    detectors.  He was on a separate train and the track

24    detectors flagged him and he was stopped by the dispatcher.

25    The OSHA complaint -- let me back up.  Subsequently he

1    then -- what this Motion to Amend is about is then when he

2    stops his train and then he notices there's another bad

3    brake on that train on March 4th.  Subsequently Mr. Lemieux

4    is brought up under investigation and he's terminated.

5         So the question here is --

6         THE COURT:  But when you say subsequently, there

7    had been some investigative activity before March 4th after

8    the February 12th incident and before the March 4th.

9         MR. FULLER:  Yes, your Honor.  And that's when he

10   would have gotten the five-day suspension on his record.

11        THE COURT:  Okay.  Go ahead.

12        MR. FULLER:  And it seems to me from the motion

13   papers of the Defense is that they are alleging that the

14   firing was never before OSHA so it would never have come

15   under the scope of the OSHA review.  And to which the

16   Plaintiff would argue that on paragraphs 21, 23, 27, 28, 37,

17   and 43 of the administrative complaint before OSHA, which

18   was filed on behalf of Mr. Lemieux on August 14th, 2015, all

19   those paragraphs, your Honor, reference the termination and

20   the firing.

21        And I agree with the Defense in the sense that

22   that specific OSHA complaint -- and I know I'm going to hear

23   the argument, well, that complaint never referenced March

24   4th.  It had nothing to do with March 4th.  And that's where

25   I think we have to view the complaint broadly, liberally,

1   and see whether it would have come under the investigator's

2   review as he's investigating Mr. Lemieux's activity on

3   February 12th, the five-day suspension, and then not even a

4   month later where his track detectors on his train tripped

5   the car, then he finds -- and this is where I would like to

6   amend the complaint, your Honor -- he finds that there's

7   really one other car in there that he reports to the

8   dispatcher as being a bad ordered car.

9           And so I don't intend to raise any new causes of

10  action, which I think is key in this case.  This is not a

11  new cause of action.  The OSHA complaint has always alleged

12  that he was terminated for violating or that the termination

13  was in violation of the FRSA action.  And that's the statute

14  where the railroad cannot retaliate against any of the

15  employees for engaging in a good faith report of hazardous

16  or unsafe conditions.

17          So I think it's important to look at the complaint

18  and construe it broadly at the administrative level and see

19  was that complaint, was that cause of action alleged?  Yes.

20  He alleged that he was terminated for reporting bad brakes.

21  There were specific facts alleged for February 12th.  I

22  would like to amend the specific facts to include in this

23  court that one extra additional report of bad brakes that

24  occurred on March 4th.  The disclosures and the

25  investigating transcript revealed that there is a good faith

1    basis to amend in that regard.

2            Importantly, your Honor, I really also believe

3    that if we look at the *Brisbois* decision, which is what the

4    railroad seems to be relying most heavily on, the facts are

5    just extremely different and it's inapposite procedurally.

6    In that case before Judge Schiltz was a Motion to Dismiss.

7    Here I'm making a Motion to Amend.  There was no Motion to

8    Dismiss filed by the railroad.

9            THE COURT:  Well, but as a practical matter, isn't

10   the analysis I need to do to address possible futility

11   essentially the analysis that would have to be done in

12   connection with a Motion to Dismiss?

13           MR. FULLER:  I would agree that an analysis would

14   overlap.  And then actually in the *Brisbois* decision Judge

15   Schiltz does go through an analysis of the complainant's

16   duty to exhaust all remedies at the OSHA stage.  And then

17   there's also law in there where the Court acknowledges that

18   those administrative complaints have to be interpreted

19   broadly, to which I would -- this is where I think the

20   *Brisbois* decision is distinct from this case -- and that is

21   there were eight allegations of retaliation in that matter.

22   And it was a Friday --

23           THE COURT:  In other words, eight separate actions

24   taken by the employer that were alleged to have been

25   retaliatory?

1          MR. FULLER:  Exactly.  And that's where I think

2     this becomes different because I had always alleged the

3     five-day suspension turned into his firing.  That was --

4     those allegations were always before OSHA.  Always.

5          THE COURT:  And what you want to add now, and the

6     question I think before me, is whether the additional action

7     on his part, additional protected activity or allegedly

8     protected activity on his part, is a trigger for the conduct

9     by the railroad should have been exhausted with OSHA, should

10    have been alleged specifically and exhausted with OSHA in

11    order to be brought here.  I mean, isn't that the question?

12         MR. FULLER:  It is in a sense that was it -- was

13    it brought.  Is the firing -- was the firing brought?  And

14    the firing is, yes.  And part of the reason why I really

15    want to have this amended complaint is because I think the

16    Plaintiff and the Defendant are a little bit on different

17    grounds when it comes to what this case is really about.

18    And I just want to be very clear that this is about a

19    wrongful termination case and it always has been about a

20    wrongful termination.

21         And so I don't want to allege any additional

22    causes of action, but the fact.  You know, if I was to see a

23    jury question, for example, on the Special Verdict Form, Did

24    Mr. Lemieux engage in a protected activity for reporting bad

25    brakes?  Yes or no.  And then the facts that will come to

1      the jury will include his activities on March 4th.

2              THE COURT:  And I understand why you want to amend

3      the complaint and I understand the value of having it clear

4      what the case is about.  And the question here is what

5      exactly the obligation to exhaust administrative remedies is

6      and whether that obligation requires specific and separate

7      allegations of the incidents of protected activity that you

8      eventually then hope to allege in District Court or not.

9      And I will ask the same -- the same question of Defense

10     Counsel and that is are you aware of any cases that have

11     looked at this -- you know, that have sliced the

12     administrative exhaustion issue in -- in this way and looked

13     at it from this perspective as opposed to separate acts on

14     the Defendant's part of retaliatory conduct?

15             MR. FULLER:  I am not aware, your Honor.  So the

16     cases that I would rely on heavily are those that are

17     construing those administrative complaints broadly in favor

18     of really what's just and right here.

19             THE COURT:  Um-hum.

20             MR. FULLER:  And that's where I think we can fall

21     on the prejudice that I think would be faced by the

22     Defendant, which really -- I don't think that there can be

23     any serious argument that this would be substantial

24     prejudice to the Canadian Pacific.

25             And the other point that I would like to highlight

1    which makes this a little bit unique is that the OSHA stage

2    really never did -- the proceeding never got off the ground.

3    And for that reason, I don't know.  After this complaint was

4    filed, it sat dormant at OSHA for the 210 days.

5                    THE COURT:  Um-hum.

6                    MR. FULLER:  And it was never picked up.  There

7    was never an OSHA investigator, to my knowledge, that called

8    and interviewed any of the participants, the witnesses for

9    the railroad.  I believe Ms. Reyes will be able to correct

10   me if I'm wrong on that, but I was not involved in any of

11   that.  There was a position statement submitted and that was

12   the extent of that investigation.

13                   So it really -- there was really no investigation.

14   And I truly believe that had OSHA took this case up, it

15   would have come to the light that this discrete, you know,

16   report on March 4th happened, occurred.  There's really no

17   dispute whether or not that did happen.  And I think that

18   this would have been covered in OSHA's investigation.

19                   And to the extent that the firing wasn't before

20   OSHA and the argument from the Defense on that, I would just

21   point the Court -- I believe I submitted this as an

22   attachment to my affidavit, and that would be footnote 7 of

23   their position statement where the railroad acknowledges

24   while in passing, Plaintiff alleged that the termination was

25   also a part of retaliatory conduct.

1        THE COURT:  Um-hum.

2        MR. FULLER:  So I believe in this situation when

3    you have the, you know, the rules of Federal Court to amend

4    the complaint and how that's supposed to be interpreted,

5    compared with the administrative liberality that under these

6    circumstances here, and the lack of prejudice that the

7    Defense would face, and that we can -- I would also note

8    that this is done within the Court's scheduling order.  So,

9    you know, I did take a little -- I don't know if offense is

10   the right word but, you know, to say that this is lack of

11   diligence on the part of counsel, I just, you know,

12   respectfully disagree and really would ask the Court to

13   grant the motion.

14       And I'll address any questions if the Court has

15   any.

16       THE COURT:  No.  I asked you the questions I

17   intended to ask you.  Thank you.

18       MR. FULLER:  Thank you, your Honor.

19       THE COURT:  All right.  Ms. Reyes.

20       MS. REYES:  Thank you, your Honor.

21       Good afternoon.

22       THE COURT:  Good afternoon.

23       MS. REYES:  May it please the Court:

24       Plaintiff claims that the OSHA complaint has

25   always alleged the termination was in violation of the

1    Federal Rail Safety Act.  When the OSHA complaint in this

2    case is carefully considered, the OSHA complaint has raised

3    only the possibility that the termination would not have

4    occurred to Plaintiff but for the five-day suspension, which

5    is particularly -- and what I'm referring to here is the

6    five-day suspension -- which is particularly and in detail

7    presented in the OSHA complaint.

8         In this retaliation case, as your Honor has

9    already previewed, there is a difference between the adverse

10   action and the -- I should state that differently.  There's

11   a difference in this retaliation case between other cases

12   that are based on other immutable protected characteristics

13   such as a race case or a gender case.

14        In this case central to the retaliation claim is

15   the existence of some alleged protected activity, which is

16   an element of a retaliation claim, and also, as we've

17   discussed, the adverse action is an element of that

18   retaliation claim.

19        Plaintiff submits that the intention of his

20   proposed amendments are to include additional protected

21   activity arising out of his job -- out of his job and his

22   report of unsafe brakes.  And he also submits that his

23   intention is to include, quote, again additional facts

24   regarding the alleged activities of March 4th, 2015.

25        As he has argued to this Court just a few minutes

1    ago, he contends that this additional facts and these

2    additional allegations will not add any new legal theories

3    or change the underlying legal theories.  But in this case

4    where an element, an essential element of this retaliation

5    claim is the protected activity, the complete absence of any

6    allegation of protected activity on March 4th of 2015 in the

7    OSHA complaint necessarily shows that now raising that

8    protected activity in a later District Court complaint

9    necessarily raises a new legal theory and a new cause of

10   action.

11         The proposed amendments present entirely new facts

12   that were never before presented.  In the briefing we raised

13   that 17 factual paragraphs were referenced in the OSHA

14   complaint, 16 of which particularly and specifically

15   referred to events occurring on February 12th of 2015.  The

16   17th paragraph was a very vague paragraph related to the

17   date on which Plaintiff started his employment with

18   Defendant.

19         THE COURT:  Um-hum.

20         MS. REYES:  That complaint put the Defendant on

21   notice, and put OSHA on notice, as to the scope of its

22   investigation that the only alleged protected activity was

23   that activity which had occurred allegedly on February 12th

24   of 2015.  The new facts purport to allege, as I said, a new

25   independent and never before asserted protected activity.

1          THE COURT:  Let me ask this.  If the Plaintiff had

2     been more vague in the OSHA complaint and just said

3     something like I reported on multiple occasions, or I

4     repeatedly reported, or just I reported a number of

5     instances of bad brakes and thereafter I was suspended and

6     thereafter I was terminated, and I believe I was terminated

7     because, you know, ultimately terminated because I had

8     reported bad brakes, but had not been specific in the

9     complaint about precisely when those reports were, would the

10     complaint have failed to exhaust remedies?  Or are you

11     saying his fault here was that he was too precise rather

12     than keeping it vague?

13          MS. REYES:  That's an interesting question and

14     it's one that I have considered, your Honor.  In this case

15     the vagueness of the allegations in the hypothetical that

16     your Honor raises would also cause the Defendant to have the

17     same concerns the Defendant has today.  In fact, if the

18     allegations were so vague that the purported activity --

19     protected activity could not be identified, then there would

20     be the possibility of a motion, depending on what forum in

21     which we found ourselves, there would be the possibility of

22     a Motion to Dismiss for failure to state a claim in that if

23     Defendant could not identify when this purported activity

24     took place and had absolutely no idea how to investigate,

25     again, OSHA would not have any idea how to investigate or

1     how to analyze that complaint.

2              The same is true here.  And maybe even more so,

3     your Honor.  In *Parisi versus Boeing*, the Eighth Circuit

4     decision that Defendants cite in their brief, the court

5     warned that there's a difference between liberally read,

6     being an administrative charge that lacks specificity, and

7     inventing a claim which was simply not made.

8              In this case, as your Honor has noticed, and asked

9     of, this complaint was so detailed with respect to February

10    12th of 2015, and there was actually, and in fact the

11    possibility, and within Plaintiff's full knowledge of the

12    activities that he purportedly engaged in on March 4th of

13    2015, it was so detailed as to only the events of February

14    12th to the exclusion of any other events that allegedly led

15    to any protected activity on the part of Plaintiff.

16             Plaintiff asserts an all too general reading of

17    his OSHA complaint and one which, if accepted, will result

18    in the invention of a claim that was not asserted below at

19    OSHA.  This results in not putting Defendant on notice of

20    the claim that only now Plaintiff purports to make against

21    Defendant; and also has deprived OSHA of the knowledge of

22    what Plaintiff now contends the scope of his case involves.

23             This fact and that discussion leads to and

24    supports the discussion of the futility of this proposed

25    amendment.  The actions under the FRSA, as we know, are

1   subject to an administrative filing requirement that's as we

2   know of the administrative exhaustion requirement.  That's

3   how we refer to it.  In this case the only claim that was

4   exhausted at OSHA, and which is properly before this Court,

5   is that retaliation claim specifically arising out of

6   purported protected activity on February 12th of 2015, and

7   leading to or allegedly leading to and contributing to a

8   five-day suspension which was issued thereafter.

9           Again, a detailed reading of the complaint only

10  hooks in the termination for the possibility that he would

11  not have been later terminated for separate and independent

12  activity had he not had that five-day on his record.

13  There's no allegation that determination was directly

14  related to any protected activity, not even the February

15  12th of 2015 protected activity which is alleged in the OSHA

16  complaint.

17          And for that reason, Defendant dropped a footnote,

18  an explanatory footnote in the position statement at OSHA,

19  which was submitted on September 9th of 2015.  So that was

20  one year ago, you know, 13 months ago or so.  When Defendant

21  submitted the position statement and stated the termination

22  is not part of this retaliation case, and even if it were,

23  Defendant analyzed very briefly how that termination would

24  not and could not relate to the purported activity of

25  February 12th of 2015.

1          At that point -- and this goes to Defendant's

2     argument that Plaintiff has in fact unduly delayed this

3     amendment, not only before this Court but before OSHA,

4     because at that point -- and I would argue even prior to

5     that point -- Defendant was -- or Plaintiff was on full

6     knowledge and full notice that if there needed to be any

7     further detail or any further explanation supporting any

8     allegation that the termination was directly retaliatory for

9     any alleged protected activity, it was then.  And Plaintiff

10    did not, after that submission of the position statement,

11    submit any additional details to OSHA, did not attempt to

12    amend the OSHA complaint, and did not thereafter even

13    respond to Defendant's position statement setting forth the

14    specifics of the argument that now we are hearing one year,

15    13 months, after the submission of that position statement

16    by Defendant, and in fact a year after the 180-day statute

17    of limitations have past.

18          To the futility argument, the exhaustion of

19    administrative remedies would bar this claim on a Motion to

20    Dismiss and Defendant would intend to move to dismiss if

21    this amendment were allowed.  And in addition, the passage

22    of the 180-day statute of limitations would bar any

23    amendment of that complaint and therefore it adds an

24    additional reason why this amendment would be futile.

25          THE COURT:  Is it Defendant's position that the

1    termination had nothing to do with that earlier five-day

2    suspension?  In other words, that the termination was on

3    grounds that were completely independent of the fact that he

4    had been suspended for five days earlier?

5              MS. REYES:  Your Honor, the -- there is a -- or

6    there was a discipline process at the time, but that process

7    for serious violations could be accelerated.  In this case

8    the termination on the part of -- of Plaintiff actually

9    occurred with one of his co-workers.  He and his co-worker

10   were both cited, investigated, and found to have engaged in

11   rule violations that led to their termination and they were

12   both terminated --

13             THE COURT:  Um-hum.

14             MS. REYES:  -- for the same activity.  That would

15   lead -- there will be more discovery in this case where

16   Defendant will continue to investigate and Plaintiffs will

17   continue to request information.  But it would be one of

18   Defendant's arguments that this termination would -- would

19   have been one of the instances in which it was a serious

20   violation for which --

21             THE COURT:  Separate and apart from the previous

22   investigation?

23             MS. REYES:  It would have to be analyzed still.

24             THE COURT:  And if you haven't kind of

25   definitively determined your position on that, I don't want

1    to lock you into a position that you're not ready to take.

2    I didn't know whether it had already been established or at

3    the time of the termination it was clear one way or the

4    other.

5                   MS. REYES:  I don't want to --

6                   THE COURT:  That's fine.

7                   MS. REYES:  -- without further discovery --

8                   THE COURT:  That's fine.

9                   MS. REYES:  -- lock my client into that position.

10   But, again, the record shows that he was given the same

11   discipline that his co-worker was given.

12                  THE COURT:  And the co-worker had not been a part

13   of previous --

14                  MS. REYES:  The co-worker had not been a part of

15   the February 12th.  That specific co-worker had not been a

16   part of the February 12th activities.

17                  THE COURT:  Okay.  Let me ask you the same

18   question I asked Mr. Fuller.  And that is are you aware of

19   any cases that have looked at this issue of whether

20   administrative remedies were exhausted where the -- in a

21   situation where the argument is -- or one -- I know you're

22   arguing that they've alleged separate retaliatory conduct as

23   well.  Let me set that aside and just look at the

24   allegations of protected conduct.  Are you aware of any

25   cases where the court has said that by adding an instance of

1    alleged protected conduct you need to be able to show

2    separately that that had -- that had been raised with the

3    administrative agency first before you get to bring it to

4    court?

5              MS. REYES:  I wish I had them on the tip of my

6    tongue.

7              THE COURT:  Do you think that there are such

8    cases?

9              MS. REYES:  I believe that there are.  And I don't

10   want to misrepresent to the Court, and if you would invite

11   us to submit any cases to the Court after this argument, I

12   believe Mr. Fuller and I could do that.

13             But I want to look closer to the *Walters* [sic]

14   case, which was cited in Defendant's brief and the facts of

15   which are just not at the top of my head right now, but that

16   case did involve a retaliation complaint and did involve the

17   Court denying the addition of a retaliation complaint that

18   was not fully set forth in the underlying administrative

19   charge.

20             Another item that is significant here is the case

21   law under the specific retaliation statute is very new and

22   is evolving.  And so to the extent there is case law under

23   this specific statute, the *Brisbois* decision is a relevant

24   and very persuasive decision for this District Court.  In

25   the *Brisbois* decision -- and I, again, understand your

1      Honor's distinction between the adverse action, an action

2      taken by the employer that's alleged to be retaliatory, and

3      the protected activity.

4           In the *Brisbois* decision, the adverse -- there

5      were a number of specific actions that Ms. Brisbois alleged

6      that the Defendant had taken against her which were not

7      originally raised in the OSHA complaint.  But, again, that

8      is slightly different than the case law you have just

9      requested.  However, it does show that if the Defendant is

10     not on notice of exactly what is being alleged against the

11     Defendant, that is a reason to find that the claim has not

12     been administratively exhausted.

13          And there is a specific paragraph in the *Brisbois*

14     decision that discusses the presentation of new facts

15     versus -- that may bolster those facts and those allegations

16     that are already in the administrative complaint, and the

17     presentation of an entirely new claim.  And here, again, the

18     complaint was so specifically limited to the February 12th,

19     2015 activity that the facts now alleged for a completely

20     separate incident on a completely separate date with a

21     separate train, a separate crew and a separate happening,

22     are not tied into the February 12th, 2014 activity.  And the

23     Defendant was not put on notice that there was any other

24     protected activity alleged in this case other than that on

25     February 12th of 2015, had no reason to look at it, had no

1     reason to think that it would be brought before OSHA.

2           THE COURT:  Is that the purpose of the requirement

3     of administrative exhaustion, to put the Defendant on

4     notice, or at least a purpose of the requirement of the

5     administrative remedies?

6           MS. REYES:  It's certainly one of the items that's

7     discussed in the cases that discuss exhaustion of

8     administrative remedies.  I believe it was discussed in the

9     *Brisbois* decision and it was also discussed in the *Parisi*

10    decision as well where -- and in fact I believe in the -- I

11    almost want to grab my notebook back there where I have some

12    case notes.  But there's a decision in Plaintiff's brief,

13    the *Popoalii* decision I believe is what it is.  It looks to

14    be a little bit of a Greek-ish name, or something that I

15    obviously cannot pronounce.

16          THE COURT:  Um-hum.

17         MS. REYES:  But that decision as well I believe

18    discussed the fact that there was no notice to defend it.

19         When -- when we look at the prejudice to the

20    Defendant of this late amendment, and I think your Honor

21    understands that I dispute Plaintiff's statement that

22    because he brought the motion on the last day that he could

23    bring this motion that there has been no delay, I submit

24    that there has been delay because since March 4th of 2015

25    when Plaintiff allegedly engaged in this activity, Plaintiff

1    knew of the activities in which he had allegedly engaged.

2    There was a subsequent investigation under the terms of the

3    applicable Collective Bargaining Agreement where the

4    Plaintiff himself provided testimony stating that what

5    Plaintiff now alleges was his actions that support

6    additional protected activity.  He himself brought that

7    information forward.  He himself provided that information,

8    and therefore that information since March 4th of 2015 has

9    always been within the knowledge of Plaintiff.

10                Later he was --

11                THE COURT:  But let me ask you this.  How has

12   Defendant been prejudiced?  I mean, is there -- are you

13   saying that evidence has been lost?  I mean, the report -- I

14   would assume that if the report was made, there's evidence

15   the report was made.  So other than the -- you know, other

16   than the aggravation, perhaps, of, you know, learning at

17   this point rather than some time previously that this is an

18   additional element of the Plaintiff's case, has there been

19   concrete prejudice as a result of his having -- of -- as a

20   result of his wanting to add it now rather than, for

21   example, when the complaint was filed?

22                MS. REYES:  Yes, in these --

23                THE COURT:  This complaint was filed.

24                MS. REYES:  Exactly, the Federal District Court.

25                THE COURT:  Yeah.

```
 1            MS. REYES:  Well, the OSHA complaint --

 2            THE COURT:  I'm not sure that there's case law out

 3     there that tells me that I get to consider what happened

 4     before the lawsuit got filed in terms of prejudice, is

 5     there?

 6            MS. REYES:  I would submit that the Court in --

 7     in -- in cases where there's an administrative exhaustion

 8     requirement -- and I don't, again, have a case for you off

 9     the tip of my tongue as you've requested -- but the Court is

10     required to consider whether the administrative remedy has

11     been exhausted.

12            THE COURT:  But that's separate and apart from

13     prejudice, right?  I mean, either it was exhausted or it

14     wasn't, and we're trying to deconstruct what exhaustion

15     means and -- but if I conclude it was -- if I conclude it

16     was not exhausted and should have been, it doesn't matter

17     whether you were or weren't prejudiced.

18            MS. REYES:  And my -- my argument would go further

19     to say that these cases, where there's an administrative

20     exhaustion requirement prior to the Plaintiff coming to this

21     District Court and filing in District Court, that that case

22     does start at the beginning of the administrative case.

23     That case, in terms of the Defendant's, you know, analysis,

24     the Defendant's defense, the Defendant's preparations for

25     defending the case, starts at the point that the
```

1     administrative complaint is filed.

2             THE COURT:  Um-hum.

3             MS. REYES:  Again, I understand that later it is a

4     de novo review in this case and a different proceeding

5     before the District Court.  But the preparations and the

6     groundwork for that case are laid, and especially where the

7     administrative piece is required, then there does -- I

8     believe there should be a consideration by the Federal Court

9     as to that period of time in which Plaintiff was required to

10    bring that administrative complaint prior to coming to

11    Federal Court.

12            And that's what happened in this case.  One year

13    of -- more than a year now, it was in August 2015, complaint

14    before OSHA.  Again, the Defendant -- there's a significant

15    amount of defense and work that goes into defending an OSHA

16    complaint.  We don't know -- Mr. Fuller has mentioned that

17    OSHA "never really started the investigation."  I don't know

18    at this point what OSHA did exactly, but I do know that

19    Defendant, from the day that they began -- from the day that

20    we received the administrative complaint, began defending

21    this case and submitted a pretty specific, well thought out,

22    and some people may say long -- I think it was 13 pages --

23    but a position statement in response to that administrative

24    complaint.

25            That position statement should have, and Defendant

1    should have had the opportunity to defend any of the claims

2    brought against it in that initial position statement.  But

3    these claims were not brought against it at the OSHA

4    complaint.  We can't go back and change that now.  That's

5    how it is.

6              Again, to the -- to the point of OSHA, your Honor

7    asked whether notice to the Defendant is one of the reasons

8    for an administrative exhaustion requirement.  Yes, it's

9    considered in the case law.  Yes, I think that's one of the

10   practical reasons for it.  And secondly, it's because

11   Congress has decided that OSHA, or whatever administrative

12   agency, should have the first stab at investigating the

13   complaint.  And in this case OSHA was given a very discrete

14   cause of action.  February 12th, five-day suspension.

15   Excuse me.

16             THE COURT:  I do that all the time.

17             MS. REYES:  Made the determination that very

18   vaguely, for no reason of direct protected activity, related

19   to the five-day suspension.  In this case OSHA didn't have

20   the chance to consider whether this case was bigger than the

21   protected activity stated on February 12th of 2015 because

22   it was simply not in the complaint.

23             THE COURT:  Okay.

24             MS. REYES:  I think that we've covered all the

25   points that Defendant intended to cover.  But just to be

1    clear, Defendant's arguments as we've discussed I believe in

2    quite a bit of detail here with the Court, is that there has

3    been undue delay by Plaintiff in bringing this motion and

4    that is one of the grounds for denying a Motion for Leave to

5    Amend the Complaint.  The motion would be futile because of

6    the lack of administrative exhaustion and also because of

7    the fact that the 180-day statute of limitations has now

8    past.  And this claim would -- this new and separate

9    independent claim based on the March 4th activity would

10   therefore be dismissible under Rule 12, and it will cause an

11   undue prejudice to Defendant in the ways that we have

12   discussed just recently.

13            THE COURT:  All right.  Thank you.

14            MS. REYES:  For those reasons we would ask that

15   the motion be denied.

16            THE COURT:  Thank you.

17            Mr. Fuller, you may respond, of course.

18            MR. FULLER:  I have to be very clear about this

19   case.  This is Mr. Scott Lemieux on February 12th who

20   reports 56 cars -- this is a train of 111 cars, and he

21   identified that there are bad brakes, unsafe brakes.  The

22   railroad -- I also do FSLA cases.  Whenever there's somebody

23   injured, you know what the defense is?  The defense is he

24   could have reported it.  Why didn't he report about that

25   slip and tripping hazard?  Why didn't he say something about

1    that icy patch that he fell and he and hurt his back?  If he

2    would have reported it, all he would have had to do was come

3    to us and we wouldn't have done anything wrong.

4         Mr. Scott Lemieux has the cars, 111 of them,

5    filled with hazardous material.  Some of them empty, sure,

6    but there is still oil and hazardous material sloshing

7    around in there.  And he is faced with a vague, ambiguous

8    rule about how -- that he's never trained on -- about how

9    thick these brake shoes should be.  Okay?

10        And he takes his Leatherman out and he measures it

11   and he says to himself, Gosh, there's a lot of brakes on

12   here that are really unsafe looking to me.  I have been

13   doing this for eight years.  He's been a conductor with

14   nothing on his record, and he reports, knowing full well

15   what's going to happen, but he does so to save his own crew

16   members in the public.  He's travelling down the St. Paul

17   yard.  It's mountainous grade.  In 1996 the Valentine's Day

18   massacre train derailment occurred right out here in the

19   St. Paul yard and he is aware of that, and so he's thinking

20   of this in the back of his mind, Do I want to be on a

21   runaway train with no brakes?  Absolutely not.  So what does

22   he do?  He risks his job.  He knows what the Canadian

23   Pacific is gonna to do.  That's why they're up here

24   defending this termination so bad.

25        Because when I get in front of that jury and I

1 tell them this story about a man who has worked his life for

2 the railroad, he has reached his maximum capacity.  That is

3 a blue-collar worker that identifies bad brakes that are

4 coming through your neighborhood and they are coming through

5 your town, and then he gets fired for it.  He doesn't even

6 get a medal for it.  He should have been commended for

7 identifying this issue.

8    THE COURT:  But it's no question that the February

9 12 report is squarely -- it was squarely before OSHA and is

10 squarely before this Court.  I mean, they are not moving to

11 disclose the entire claim.  I mean, there's no question that

12 February 12 report is -- is in the mix here.

13    So the question is the obligation to exhaust

14 administrative remedies and what exactly it means.

15    MR. FULLER:  And I understand that legal question.

16 I just think the background is important to what this leads

17 up to.  Because if you really do look at the complaint, and

18 you look at it with, you know, intellectual honesty and did

19 the Defense have notice that bad brakes led to his

20 termination.  Paragraph 21.  Conductor Lemieux was found in

21 violation of GCOR 1.29, assessed a five-day suspension from

22 service, which resulted in his eventual termination.

23    Paragraph 27.  It had always been about their

24 violation of Section 20109(b)(1)(A), which is that the

25 railroad cannot discriminate or suspend anybody for in good

1    faith reporting a hazardous safety or security condition.

2              So this is notice pleading.  We can go back to law

3    school to think about, well, are you on notice and was it

4    exhausted?  This complaint was squarely put before OSHA.

5    There's no additional cause of action, which I believe if

6    you take a close look at the case law you're going to see

7    that there are separate, distinct retaliations.  And to

8    claim that they didn't have any notice, I would just think

9    this is all about reporting of brakes.

10             And your Honor asked the question about, well, if

11   I would have been more vague in the complaint where we would

12   be.  So with giving them more specificity, they are trying

13   to use it as a sword.  And I think this all needs to hinge

14   back on what's fair in this case.  And you had asked counsel

15   what prejudice they suffered, and I don't believe the

16   question was ever answered.  That's because there is no

17   prejudice.  This is a case that has just gotten off the

18   ground.  OSHA did no investigation whatsoever.  Discovery

19   has just been sent by my office.

20             There is absolutely no prejudice that the Defense

21   can actually point to.  I'm talking concrete prejudice.

22   There might be prejudice because it's going to be an

23   additional claim that's supported by the evidence.  But, you

24   know, I think this complaint or this Motion to Amend really

25   could have been brought before the jury when the evidence

1    shows that.

2            So either way, the jury is going to hear about his

3    conduct on March 4th.  The jury is going to hear about how

4    that related to his February 12th cause of action because,

5    as I allege in OSHA, it all related to his termination.  And

6    the claim is going to be that they didn't follow their own

7    policy and the evidence is going to be overwhelming.

8            The Canadian Pacific at the time, and you heard

9    counsel just say this, that they had a five-day, ten-day,

10   thirty-day, dismissal.  They skipped a lot of steps in

11   there.  They went from a five-day suspension right to the

12   termination.  And the reason why is because on March 4th, as

13   soon as he reported 56 brakes, this guy becomes a targeted

14   employee and he's being what's called on the railroad --

15   it's called bird dog or extra ops test.  And so he's now

16   being focused on as someone who has reported bad activities.

17           And the temporal proximity -- I know the Defense

18   wants to create, you know, this long time gap.  But February

19   12th to March 4th to April 13th, which was his termination,

20   is really going to support the temporal proximity in favor

21   of the Plaintiff.  And so with all due respect, I would just

22   ask that the Court grant this motion and mainly because the

23   Defense cannot cite any unfair prejudice that it would

24   suffer.  And I would like to thank the Court for its time

25   this afternoon.

1          THE COURT:  All right.  Thank you both.

2          I will take the motion under advisement and we

3    will get an order out as soon as we can.  Thank you very

4    much.

5          (Court adjourned at 3:51 p.m.)

6                         *     *     *

7

8

9          I, Carla R. Bebault, certify that the foregoing is

10   a correct transcript from the digital audio recording of

11   proceedings in the above-entitled matter, transcribed to the

12   best of my skill and ability.

13

14

15            Certified by:   s/Carla R. Bebault
                             Carla Bebault, RMR, CRR, FCRR
16

17

18

19

20

21

22

23

24

25